STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. JOHN REPP AND HOWARD J. STILES, DEFENDANTS-RESPONDENTS.

Argued October 21, 1975—Decided January 27, 1976.

*Mr. Peter N. Gilbreth,* Deputy Attorney General, argued the cause for plaintiff-appellant (*Mr. Daniel J. Fitzpatrick, Jr. and Mr. Gilbreth,* Deputy Attorneys General, of counsel and on the briefs; *Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

*Mr. Edward J. Dimon,* Assistant Deputy Public Defender, argued the cause for defendant-respondent Howard J. Stiles (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

*Mr. Leonard A. Cinaglia* argued the cause for defendant-respondent John Repp.

The opinion of the Court was delivered by
SULLIVAN, J. Defendants John Repp and Howard J. Stiles, together with Charles LaPollo, were tried by jury

and convicted on a charge of possession of a shotgun in an automobile without having first obtained a firearms purchaser identification card, a violation of *N. J. S. A.* 2A: 151-41(b). On appeal by Repp and Stiles,[1] the Appellate Division reversed the judgment of conviction as to them. *State v. Repp,* 129 *N. J. Super.* 588 (App. Div. 1974). It held that the contention made at trial by LaPollo, the owner of the shotgun, that he did not need a firearms purchaser identification card because he had acquired the firearm prior to the enactment of the statute requiring the obtaining of such a card, would have constituted a defense to the charge of violating *N. J. S. A.* 2A:151-41(b) and that the trial court should have allowed the presentation of proofs on this point.

The Appellate Division further held that if LaPollo was not required to have a firearms purchaser identification card, then Repp and Stiles, alleged joint possessors of the same firearm, would also be protected. Accordingly, the judgment of conviction as to them was vacated and the matter remanded for a new trial. We reverse.

The evidence presented at trial may be summarized as follows:

On the evening of April 9, 1971, Horace Lederman was at work at a service station owned by Charles LaPollo. Defendants Repp and Stiles and their wives were present at the time. A noise was heard in the rear of the station. Thinking it was an attempted burglary, Lederman telephoned LaPollo, told him of the incident and said he would not continue working unless he received protection. LaPollo, who was home, left immediately for the station. When he arrived, defendants and their wives were still there. LaPollo asked Stiles for his (LaPollo's) shotgun which LaPollo had left at Stiles' apartment the night before. LaPollo had brought the gun to the apartment to use Stiles' gun-cleaning kit.

---

[1] LaPollo did not appeal his conviction.

Mrs. Stiles and Mrs. Repp left in the Stiles' car to get the shotgun and bring it back to the service station. On the way to the apartment, the two women were followed by another car with three men in it. When they arrived at the apartment and Mrs. Stiles got out of the car, she was actually accosted by one of the men in the other vehicle. Mrs. Repp ran upstairs to call the police, but by the time they responded the other car had left and the police said there was nothing that could be done.

Mrs. Stiles took LaPollo's shotgun, put it in a gun case, got a bag of shells and put both the gun and the shells in the car. She and Mrs. Repp then decided to drive to the Repp apartment. Enroute they saw the car which had previously followed them parked by the police station. They returned to the service station and told their husbands what had happened. LaPollo, Repp and Stiles immediately got into the car and, with Mrs. Stiles driving, proceeded to the police station and found the other car still parked there. LaPollo, Repp and Stiles jumped out of their vehicle, ran over to the other car and threw open the doors. At this point a police officer, who was driving by, saw what was happening and stopped to investigate. Apparently his presence aborted any serious confrontation and the incident was terminated. However, when the officer walked over to the Stiles' car he noticed a shotgun barrel protruding from a gun case on the front seat. Stiles was asked to remove the gun from the car, and, while doing so, he "broke" the barrel and apparently ejected a shell from the chamber since the officer found a shotgun shell on the floor of the car. None of the men could produce a firearms purchaser identification card and they were placed under arrest.

As heretofore noted, all three, LaPollo, Stiles and Repp, were found guilty of a violation of *N. J. S. A.* 2A:151-41 (b), which provides:

"Except as hereinafter provided, any person who carries, holds or possesses in any automobile, carriage, motor cycle or other vehicle, or on or about his clothes or person, or otherwise in his possession, or

in his possession or under his control in any public place or public area:

   a. * * *

   b. A rifle or shotgun without first having obtained a firearms purchaser identification card in accordance with the provisions of this chapter * * *

   c. * * * is guilty of a high misdemeanor."

At trial LaPollo, *inter alia,* contended that he had acquired the shotgun prior to August 5, 1966, the effective date of the firearms purchaser identification card provisions of the Gun Control Law, and that by reason thereof he was exempt from the statutory requirement that he have a firearms purchaser identification card insofar as his possession of this particular shotgun was involved. The trial court did not agree with this legal contention and did not permit LaPollo to present fully his proofs on the point. The trial court ruled that LaPollo's possession of the shotgun in the automobile on April 9, 1971 was subject to the provisions of *N. J. S. A.* 2A:151–41(b).

As heretofore noted, the Appellate Division held that this ruling was error and that LaPollo did not need a firearms purchaser identification card if he had acquired the shotgun prior to August 5, 1966. The Appellate Division also held that if LaPollo did not need a firearms purchaser identification card, then Repp and Stiles, as alleged joint possessors with LaPollo, would also be protected.

■ Our conclusion is that the trial court's ruling on this issue was correct and the Appellate Division erred in not sustaining it. We have this same date decided *State v. Riley,* 69 *N. J.* 217 (1976). Our opinion therein is also concerned with the New Jersey Gun Control Law, *N. J. S. A.* 2A:151–1 *et seq.,* and, in particular, the provisions thereof dealing with a firearms purchaser identification card (hereinafter identification card). We reviewed these provisions and concluded therefrom that such an identification card acts as a certification as to the mental, physical and moral qualifications of the person to whom the card is issued, and

authorizes that person to engage in certain activities involving rifles and shotguns.

In *Riley* we pointed out that the identification card serves a dual purpose under the statute. It acts as a legal permit to the one to whom the card is issued to purchase or acquire a rifle or shotgun. *N. J. S. A.* 2A:151–32. Obviously this provision would not apply to LaPollo's acquisition of the shotgun if it antedated the statute. However, the identification card also permits the person to whom the card is issued to carry, hold or possess a rifle or shotgun in an automobile or in any public place or public area. *N. J. S. A.* 2A:151–41(b). This latter kind of activity is unrelated to when or how the rifle or shotgun was originally acquired. The statute here deals with present possession of a rifle or shotgun and specifies that this kind of activity is permissible provided the person involved has been issued an identification card.

As was noted in *Riley,* the identification card is not a registration for a particular firearm and does not indicate what rifle or shotgun has been purchased or acquired or is possessed thereunder. It merely states that the person to whom the card has been issued "is hereby granted permission to purchase and carry rifles and shotguns pursuant to provisions of N. J. S. 2A:151–32 and 41 with amendments and supplements."

From the foregoing, it is clear that LaPollo's alleged acquisition of the particular shotgun prior to August 5, 1966 was unrelated to his carrying or possessing that firearm in an automobile on April 9, 1971. This latter activity took place long after the effective date of the statute and was subject to its provisions. Since LaPollo did not have an identification card, his possession of the shotgun in the automobile on that date was a violation of *N. J. S. A.* 2A:151–41(b). The same rationale applies to defendants Repp and Stiles. The jury verdict of guilt necessarily indicated a finding that they and LaPollo jointly possessed the shotgun.

Unless each of them held an identification card, his or her possession was unlawful under the statute.

We recognize that the statutory designation of the card as a firearms purchaser identification card is to some extent a misnomer since the person to whom the card is issued is not only authorized to purchase or acquire a rifle or shotgun, but is also permitted to carry and possess such firearm as set forth in *N. J. S. A.* 2A:151–41. However, the statutory provisions as well as the legend on the card itself, heretofore quoted, clearly indicate the dual authorization.

█ We find no merit to the further contention that the trial judge erred in refusing to permit the jury to consider whether defendants, in the factual situation shown, came under the provision of *N. J. S. A.* 2A:151–42(a). Section 42 in its entirety provides:

"Nothing contained in section 2A:151–41 shall be construed:

a. to prevent a person from keeping or carrying about his place of business, dwelling house, premises, or on land possessed by him, any firearm or from carrying the same from any place of purchase to his dwelling house or place of business, or from his dwelling house or place of business to or from any place where repairing is done, to have the same repaired; nor

b. to prevent any person from carrying a firearm or knife in the woods or fields or upon the waters of this State for the purpose of hunting, target practice, or fishing; nor

c. to prevent any person from transporting any firearm while traveling directly to or from any place for the purpose of hunting provided such person has in his possession a valid hunting license or while traveling directly to or from any target range or other authorized place for the purpose of practice, match, target, trap or skeet shooting or shooting exhibitions, provided in all cases that during the course of traveling for the purposes set forth in this section, the firearm is unloaded and contained in a closed and fastened case, gunbox, securely tied package, or locked in the trunk of the automobile in which the person is transporting the firearm, and provided further that the course of travel to or from said areas may include such deviations as may be reasonable or necessary under the circumstances; and provided further that nothing contained in this chapter shall be considered as an exemption or exception from the requirements or provisions of Title 23 of the Revised Statutes and amendments thereto or any rules and regulations promulgated thereunder."

Suffice it to say that we find no possible basis for a finding that the activities in question fell within paragraph (a) of the section. We have also considered the numerous other points raised by defendants in their briefs here and in the Appellate Division. We find no substance in any or all of them.

■ Finally, we deal with the State's contention that the overall legislative intent in enacting these sections of the Gun Control Law was that the carrying and possessing of rifles and shotguns, as permitted by section 41(b), was to be limited to the purposes set forth in section 42, or to the personnel specified in section 43.

Section 43, in summary, states that section 41 does not apply to state and federal law enforcement officers, members of the armed forces when on duty, jailors, guards, licensed retail firearms dealers, etc. Obviously the carrying and possession of rifles and shotguns authorized by section 41(b) is not intended to be limited to the personnel specified in section 43, since those persons are expressly not required to obtain an identification card for such activity.[2] The provisions of section 41 clearly are intended to apply to persons other than those specified in section 43.

The same rationale holds for section 42, part of which we considered in another context. This section, heretofore set forth in full, essentially provides that nothing contained in section 41 shall be construed to prevent a person from carrying a firearm about one's premises, or for purposes of repair, hunting or target practice, or transportation in connection therewith. In effect, the activities specified in section 42 are exempted from the provisions of section 41 and one does not need an identification card to engage in any of

---

[2]Section 32(B) (under the caption Permit To Purchase Firearms) provides that no person shall receive, purchase or otherwise acquire a rifle or shotgun unless such person possesses a valid firearms purchaser identification card. Presumably this would apply to the personnel specified in section 43.

them. To argue that the authorization in section 41 to carry a rifle or shotgun is limited to the activities set forth in section 42 is to make the statute self-contradictory.

In *State v. Hatch,* 64 *N. J.* 179, 187 (1973) we commented that our Gun Control Law presents difficulties. Perhaps it is unwise to permit persons to carry or possess a rifle or shotgun as set forth in section 41(b), subject only to the obtaining of an identification card. However, this is a matter for legislative consideration. Moreover, prior to 1966, and except for the prohibition against carrying concealed weapons, see *State v. Nerwinski,* 69 *N. J. Super.* 239 (App. Div. 1961), *cert.* denied 369 *U. S.* 825, 82 *S. Ct.* 841, 7 *L. Ed.* 2d 790 (1962), there was no statutory restriction on the carrying or possession of a rifle or shotgun by one who was not a minor, idiot, drug addict, or convicted criminal.

The judgment of the Appellate Division is reversed and the conviction of defendants Repp and Stiles is hereby reinstated.

Justice SCHREIBER and Judge CONFORD join in the foregoing opinion except that they would direct entry of a judgment of acquittal as to defendant Repp on the ground that Repp's connection with the shotgun was so tenuous as to be insufficient as a matter of law to present a jury issue as to his possession.

*For reversal as to defendants Repp and Stiles*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD—5.

*For reversal as to defendant Stiles and affirmance as to defendant Repp.*—Justice SCHREIBER and Judge CONFORD —2.